1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DANIEL LAQUINN JONES, | ) | 1:10-cv—02398-LJO-SKO-HC |
| | ) | |
| Petitioner, | ) | ORDER DIRECTING THE CLERK TO |
| | ) | SUBSTITUTE WARDEN RICK HILL AS |
| | ) | RESPONDENT |
| v. | ) | |
| | ) | FINDINGS AND RECOMMENDATIONS TO |
| WARDEN RICK HILL, | ) | DENY PETITIONER'S MOTIONS TO |
| | ) | EXPAND THE RECORD AND TO AMEND |
| Respondent. | ) | THE PETITION (DOC. 22) |
| | ) | |
| _____ | ) | FINDINGS AND RECOMMENDATIONS TO |
| | | DENY THE PETITION FOR WRIT OF |
| | | HABEAS CORPUS (DOC. 1), ENTER |
| | | JUDGMENT FOR RESPONDENT, AND |
| | | DECLINE TO ISSUE A CERTIFICATE OF |
| | | APPEALABILITY |

OBJECTIONS DEADLINE:
THIRTY (30) DAYS

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C.§ 636(b)(1) and Local Rules 302 through 304.  Pending before the Court is the petition, which was filed on November 9, 2010, along with supporting exhibits.  Respondent filed an answer on March 15, 2011, with supporting documentation of the state court record.  Petitioner filed a traverse on April 11, 2011.

1

1    I.   Jurisdiction

2         Because the petition was filed after April 24, 1996, the

3    effective date of the Antiterrorism and Effective Death Penalty

4    Act of 1996 (AEDPA), the AEDPA applies in this proceeding.   Lindh

5    v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008

6    (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

7         A district court may entertain a petition for a writ of

8    habeas corpus by a person in custody pursuant to the judgment of

9    a state court only on the ground that the custody is in violation

10   of the Constitution, laws, or treaties of the United States.   28

11   U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

12   375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, –, 131 S.Ct. 13,

13   16 (2010) (per curiam).   Petitioner claims that in the course of

14   the proceedings resulting in his conviction and sentence, he

15   suffered violations of his Constitutional rights.   The challenged

16   judgment was rendered by the Fresno County Superior Court (FCSC),

17   which is located within the territorial jurisdiction of this

18   Court.   28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).

19        Petitioner named, and Respondent filed an answer on behalf

20   of, Respondent Anthony Hedgepeth, the warden of the Salinas

21   Valley State Prison, where Petitioner was confined at the time

22   the petition was filed.   Thus, Petitioner named as Respondent a

23   person who had custody of Petitioner.   Although Petitioner is

24   presently incarcerated at Folsom State Prison (FSP), the Court

25   maintains its jurisdiction because "jurisdiction attaches on the

26   initial filing for habeas corpus relief, and it is not destroyed

27   by a transfer of the petitioner and the accompanying custodial

28   change."   Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990)

2

1  (citing <u>Smith v. Campbell</u>, 450 F.2d 829, 834 (9th Cir. 1971)).

2      Accordingly, the Court concludes that it has jurisdiction

3  over the subject matter of the action and the person of the

4  Respondent.

5      II.   <u>Order to the Clerk to Substitute the Respondent</u>

6      The official website of the California Department of

7  Corrections and Rehabilitation (CDCR)[1] indicates that Rick Hill

8  is presently the warden of the FSP.

9      Fed. R. Civ. P. 25(d) provides that when a public officer

10  who is a party to a civil action in an official capacity dies,

11  resigns, or otherwise ceases to hold office while the action is

12  pending, the officer's successor is automatically substituted as

13  a party.  It further provides that the Court may order

14  substitution at any time, but the absence of such an order does

15  not affect the substitution.

16      The record reflects that Petitioner's present custodian is

17  Warden Rick Hill.  It is, therefore, appropriate under rule 25(d)

18  to order a substitution of the proper Respondent.  Accordingly,

19  it is ORDERED that Warden Rick Hill be SUBSTITUTED as the

20  Respondent.

21      III.  <u>Procedural Summary</u>

22      Petitioner was convicted by a court trial in the FCSC of

23  shooting at an inhabited dwelling in violation of Cal. Pen. Code

24  § 246 (count 3), unlawful possession of a firearm in violation of

25

26      [1] The Court may take judicial notice of facts that are capable of
accurate and ready determination by resort to sources whose accuracy cannot
reasonably be questioned, including undisputed information posted on official

27  websites.  Fed. R. Evid. 201(b); <u>United States v. Bernal-Obeso</u>, 989 F.2d 331,
333 (9th Cir. 1993); <u>Daniels-Hall v. National Education Association</u>, 629 F.3d

28  992, 999 (9th Cir. 2010).  The address of the official website for the CDCR is
http://www.cdcr.ca.gov.

Cal. Pen. Code § 12021(c)(1) (count 4), and being an active
participant in a criminal street gang in violation of Cal. Pen.
Code § 186.22(a) (count 5).  The court found true allegations
that Petitioner had unlawfully discharged a firearm within the
meaning of Cal. Pen. Code § 12022.53(c), personally used a
firearm within the meaning of Cal. Pen. Code § 12022.5(a), and
committed the unlawful shooting at the inhabited dwelling in
association with, at the direction of, or for the benefit of a
criminal street gang within the meaning of Cal. Pen. Code §
186.22(b).  (LD 1, 1-2.)[2]

Petitioner was sentenced to a seven-year term for shooting
at an inhabited dwelling, fifteen years to life for the street
gang allegation, and twenty years for discharging a firearm; a
ten-year term for personal use was stayed.  (Id. at 2.)

On appeal, the California Court of Appeal for the Fifth
Appellate District (CCA) affirmed the judgment of conviction but
remanded the case for re-sentencing as follows:

> The seven-year sentence imposed on the section 246
> conviction is ordered stricken.  The 10-year section
> 12022.5, subdivision (a) enhancement is ordered
> stricken.  On remand, the court shall impose the 15
> years to life called for by section 186.22, subdivision
> (b)(4) as a penalty for the section 246 count 3
> conviction itself. (See part II of this opinion, *supra*.)
> The matter is remanded to the trial court for
> resentencing in accordance with the views expressed
> in this opinion.

(LD 1, 21.)

Petitioner sought review in the California Supreme Court
(CSC).  The CSC denied review of his claim of ineffective

---

[2] "LD" refers to documents lodged by the Respondent in support of the
answer.

4

assistance of counsel, but granted review of whether a violation
of Cal. Pen. Code § 246 (shooting at an inhabited dwelling) that
is committed to benefit a criminal street gang pursuant to Cal.
Pen. Code § 186.22(b)(4)(B) is a felony punishable by
imprisonment in the state prison for life within the meaning of
Cal. Pen. Code § 12022.53(a)(17) such that the sentence may be
enhanced under § 12022.53(c) for the defendant's personal and
intentional discharge of a firearm. (LD 2-4.) The CSC issued a
decision rejecting Petitioner's challenge to the sentence and
affirming the CCA's decision. (LD 5.)

While his petition for review was pending, Petitioner filed
a petition for writ of habeas corpus in the FCSC alleging denial
of his right to the effective assistance of counsel based on
trial counsel's failure or refusal to investigate and present
witnesses Batten and Clay, whose declarations or witness
statements, which Petitioner characterized as new evidence,
contradicted the testimony of prosecution witness Demont Wilson.
Petitioner also raised appellate counsel's failure to raise an
issue of instructional error on appeal. (LD 6.) The FCSC denied
the petition. (LD 7.)

Petitioner filed a petition for writ of habeas corpus
raising the same issues in the CCA. (LD 8.) The petition was
denied "without prejudice to petitioner refiling his petition in
the superior court." (LD 9.) Neither party has submitted any
information that would indicate that Petitioner filed any
additional petitions in the CSC.

IV.  <u>Facts</u>

In a habeas proceeding brought by a person in custody

5

pursuant to a judgment of a state court, a determination of a

factual issue made by a state court shall be presumed to be

correct; the petitioner has the burden of producing clear and

convincing evidence to rebut the presumption of correctness.  28

U.S.C. § 2254(e)(1); Sanders v. Lamarque, 357 F.3d 943, 947-48

(9th Cir. 2004).  This presumption applies to a statement of

facts drawn from a state appellate court's decision.  Moses v.

Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009).

Here, the CCA considered and decided Petitioner's

ineffective assistance of counsel claim; however, the CSC denied

review of all but Petitioner's sentencing claim, which presented

an issue of law and did not involve different or disputed facts.

Thus, to analyze Petitioner's claim that his trial counsel was

ineffective, the CCA's version of the facts of Petitioner's

offense and trial proceedings will be set forth.  The following

summary is taken from the decision of the Court of Appeal of the

State of California, Fifth Appellate District, in People v.

Daniel Laquinn Jones, case number F047448, filed on October 25,

2006 (LD 1):

                              FACTS

> After members of one gang (the East Lane Six Deuce
> Diamond Crips, or simply "East Lane") exchanged words
> with a member of another gang (the Hoover Crips)
> outside of an apartment complex, one of the East Lane
> gang members fired several shots. No one was struck by
> any of the bullets, but one of the bullets passed
> through the living room window and into the inner wall
> of one of the apartments. Fragments of wall fell onto
> the hair of a 14-year-old girl who was sitting on a
> couch in the living room of that apartment. Appellant
> Daniel Jones, whose gang moniker was "D-Loc," was tried
> without a jury and convicted of assault with a
> semiautomatic firearm (§ 245, subd.(b)), discharging
> a firearm at an inhabited dwelling house (§ 246) and
> other crimes. Witnesses Demont Wilson and Elizabeth

Brown both identified appellant as the shooter. Demont
Wilson testified that appellant had been only four
or five feet away from him just prior to the shooting.

Appellant moved for a new trial on the ground of newly
discovered evidence. The evidence was statements from
two witnesses: Samuel "Trigger" Miles, one of the East
Lane gang members who was present at the incident, and
Lamont Wilson, the Hoover Crip.FN3 Both men had refused
to cooperate with the police investigation prior to the
trial. Both men said appellant was not the shooter, but
would not say who the shooter was. Miles said he knew
who the shooter was. Lamont Wilson claimed he did not
know the shooter's name but had "seen him, uh, last
weekend as a matter of fact" and said that if he saw
the shooter again he could identify the shooter. Miles
was charged along with appellant. He entered a plea to
charges of assault with a firearm and street gang
terrorism, and received a two year sentence. Miles
denied that he was the shooter.

> FN3. Lamont Wilson was Demont Wilson's
> younger brother.

The court granted appellant's motion for a new trial.
Appellant had a second nonjury trial before the same
judge who had presided at the first trial. At
appellant's second trail (sic) Demont Wilson again
identified appellant as the shooter. Elizabeth Brown
recanted her identification of appellant as the
shooter, but Officer Danny Kim testified that on the
night of the shooting Brown identified appellant as the
shooter. Appellant did not call Miles as a witness at
the second trial, apparently believing that Miles's
testimony would hurt more than it would help. The
prosecution was apparently of the same view and called
Miles as a prosecution witness at the second trial.
Miles testified that someone known as "Elijah" was with
him at the apartments and had a gun. Miles denied that
he saw Elijah fire the gun, but said that "[i]t could
have been" Elijah who fired the gun. The prosecution
presented evidence that prior to the second trial Miles
had identified Elijah Cruz as the shooter. The
prosecution also presented undisputed evidence that
Elijah Cruz had been in custody at the time of the
shooting, and that Cruz was now deceased. Lamont Wilson
did testify. He and a defense investigator were the
only defense witnesses called at the second trial.
Lamont Wilson denied that East Lane gang member "Baby
James" Batten had been present at the incident, even
though Batten (like Miles) had already been convicted
of assault with a firearm and street gang terrorism for
his role in the incident. Lamont Wilson said the
shooter was someone he knew as "MacDre" and that MacDre
looked nothing like appellant. Lamont Wilson testified

that he had not cooperated at all with the police.

The judge at appellant's second trial found appellant guilty of shooting at an inhabited dwelling (§ 246; count 3), unlawful possession of a firearm (§ 2021, subd. (c)(1); count 4) and street terrorism (§ 186.22, subd. (a); count 5.) On count 3, the court also found true special allegations that appellant personally used a firearm (§ 12022.5, subd. (a)(1)), that appellant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and that appellant committed the crime for the benefit of a criminal street gang (§ 186.22, subd. (b)(4)(B)). The court also found true a special allegation that the count 4 crime was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). The court acquitted appellant of assault with a semiautomatic firearm (§ 245, subd. (b); count 1) and of assault with a firearm (§ 245, subd. (a)(2)); count 2), apparently due to doubt about who or what appellant was shooting at. (Counts 1 and 2 alleged assaults upon Lamont Wilson's brother Demont Wilson, who was also present.)

Appellant then once again moved for a new trial on the ground of newly discovered evidence. This time appellant presented declarations of three persons (and the transcript of a statement taken from one of them) who stated that key prosecution witness Demont Wilson had been inside one of the apartments at the time the shooting had occurred outside. Notably absent from the three declarations and the statement was any information whatsoever as to why these three individuals had not given this information to either the prosecution or the defense at any earlier time. The court denied this second motion for a new trial.

(LD 1, 3-5.)

V.   Standard of Decision and Scope of Review

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an

8

1  unreasonable determination of the facts in light
2  of the evidence presented in the State court
   proceeding.

3      Clearly established federal law refers to the holdings, as
4  opposed to the dicta, of the decisions of the Supreme Court as of
5  the time of the relevant state court decision.  Cullen v.
6  Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v.
7  Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S.
8  362, 412 (2000).  It is thus the governing legal principle or
9  principles set forth by the Supreme Court at the pertinent time.
10 Lockyer v. Andrade, 538 U.S. 71-72.

11     A state court's decision contravenes clearly established
12 Supreme Court precedent if it reaches a legal conclusion opposite
13 to, or substantially different from, the Supreme Court's or
14 concludes differently on a materially indistinguishable set of
15 facts.  Williams v. Taylor, 529 U.S. at 405-06.  The state court
16 need not have cited Supreme Court precedent or have been aware of
17 it, "so long as neither the reasoning nor the result of the
18 state-court decision contradicts [it]."  Early v. Packer, 537
19 U.S. 3, 8 (2002).  A state court unreasonably applies clearly
20 established federal law if it either 1) correctly identifies the
21 governing rule but then applies it to a new set of facts in an
22 objectively unreasonable manner, or 2) extends or fails to extend
23 a clearly established legal principle to a new context in an
24 objectively unreasonable manner.  Hernandez v. Small, 282 F.3d
25 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.  An
26 application of clearly established federal law is unreasonable
27 only if it is objectively unreasonable; an incorrect or
28 inaccurate application is not necessarily unreasonable.

9

1  <u>Williams</u>, 529 U.S. at 410.

2       A state court's determination that a claim lacks merit
3  precludes federal habeas relief as long as it is possible that
4  fairminded jurists could disagree on the correctness of the state
5  court's decision.  <u>Harrington v. Richter</u>, 562 U.S. -, 131 S.Ct.
6  770, 786 (2011).  Even a strong case for relief does not render
7  the state court's conclusions unreasonable.  <u>Id.</u>  To obtain
8  federal habeas relief, a state prisoner must show that the state
9  court's ruling on a claim was "so lacking in justification that
10 there was an error well understood and comprehended in existing
11 law beyond any possibility for fairminded disagreement."  <u>Id.</u> at
12 786-87.  The standards set by § 2254(d) are "highly deferential
13 standard[s] for evaluating state-court rulings" which require
14 that state court decisions be given the benefit of the doubt, and
15 the Petitioner bear the burden of proof.  <u>Cullen v. Pinholster</u>,
16 131 S. Ct. at 1398.  Further, habeas relief is not appropriate
17 unless each ground supporting the state court decision is
18 examined and found to be unreasonable under the AEDPA.  <u>Wetzel v.</u>
19 <u>Lambert</u>, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

20      In assessing under section 2254(d)(1) whether the state
21 court's legal conclusion was contrary to or an unreasonable
22 application of federal law, "review... is limited to the record
23 that was before the state court that adjudicated the
24 claim on the merits."  <u>Cullen v. Pinholster</u>, 131 S. Ct. at 1398.
25 Evidence introduced in federal court has no bearing on review
26 pursuant to § 2254(d)(1).  <u>Id.</u> at 1400.  In a habeas proceeding
27 brought by a person in custody pursuant to a judgment of a state
28 court, a determination of a factual issue made by a state court

shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.   28 U.S.C. § 2254(e)(1).   A state court decision that was on the merits and was based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings.   Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

VI.   Ineffective Assistance of Counsel

Petitioner contends that his right to the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments was violated by trial counsel's failure to investigate and present in a timely manner crucial, exculpatory evidence consisting of testimony by Charles Clay, James Batten, and Lynn Chapman, who declared under penalty of perjury that at the time of the shooting, chief prosecution witness Demont Wilson was actually inside the apartment.

A.   The State Court Decision

This Court will review the last reasoned decision of a state court on the ineffective assistance of counsel claim.   The last reasoned decision must be identified in order to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1).   Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003).

Here, the CCA issued a reasoned decision on the ineffective assistance claim, but the CSC denied review.   Thus, the CCA's decision was the last reasoned decision in which the state court adjudicated on the merits claims that were presented to the

state's highest court.  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This Court will thus "look through" the unexplained decision of the CSC to the CCA's last reasoned decision as the relevant state-court determination.  Id. at 803-04; Taylor v. Maddox, 366 F.3d 992, 998 n.5 (9th Cir. 2004).

The pertinent portion of the CCA's decision is as follows:

A. The Right to Effective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution states in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." The Fourteenth Amendment states in pertinent part that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law...." The court in Gideon v. Wainwright (1963) 372 U.S. 335 held that the Sixth Amendment's right to counsel is one of the "fundamental rights" made obligatory upon the states by the Fourteenth Amendment's guarantee of due process. (Gideon v. Wainwright, supra, 372 U.S. at p. 342.) The law pertaining to a defendant's claim of a denial of effective assistance of counsel is well established:

" 'Every person accused of a criminal offense is entitled to constitutionally adequate legal assistance.' (People v. Pope (1979) 23 Cal.3d 412, 424 [152 Cal.Rptr.732, 590 P.2d 859, 2 A.L.R.4th 1] (Pope); see also People v. Ledesma (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404, 729 P.2d 839] (Ledesma).) To establish a claim of inadequate assistance, a defendant must show counsel's representation was 'deficient' in that it 'fell below an objective standard of reasonableness .... [¶] ... under prevailing professional norms.' ([Strickland v. Washington (1984) 466 U.S. 668], 688 [104 S.Ct. at pp.2063-2065]; In re Jones (1996) 13 Cal.4th 552, 561 [54 Cal.Rptr.2d 52, 917 P.2d 1175].) In addition, a defendant is required to show he or she was prejudiced by counsel's deficient representation. (Strickland, supra, 466 U.S. at p. 688 [104 S.Ct. at pp.2064-2065];

*Ledesma, supra*, 43 Cal.3d at p. 217.) In
determining prejudice, we inquire whether
there is a reasonable probability that, but
for counsel's deficiencies, the result would
have been more favorable to the defendant.
(*Strickland, supra*, 466 U.S. at p. 687 [104
S.Ct. at p.2064]; *In re Sixto* (1989) 48
Cal.3d 1247, 1257 [259 Cal.Rptr. 491, 774
P.2d 164].)

"In evaluating a defendant's claim of
deficient performance by counsel, there is a
'strong presumption that counsel's conduct
falls within the wide range of reasonable
professional assistance' (*Strickland, supra*,
466 U.S. at p. 689 [104 S.Ct. at p.2065]; *In
re Jones, supra*, 13 Cal.4th at p. 561), and
we accord great deference to counsel's
tactical decisions. (*In re Fields* (1990) 51
Cal.3d 1063, 1069-1070 [275 Cal.Rptr. 384,
800 P.2d 862] (*Fields*).) Were it otherwise,
appellate courts would be required to engage
in the ' "perilous process" ' of
second-guessing counsel's trial strategy.
(*Pope, supra*, 23 Cal.3d at p. 426.)
Accordingly, a reviewing court will reverse a
conviction on the ground of inadequate
counsel 'only if the record on appeal
affirmatively discloses that counsel had no
rational tactical purpose for his act or
omission.' (*People v. Fosselman* (1983) 33
Cal.3d 572, 581 [189 Cal.Rptr. 855, 659 P.2d
1144] (*Fosselman*); see also *People v. Mendoza
Tello* (1997) 15 Cal.4th 264 [62 Cal.Rptr.2d
437, 933 P.2d 1134]; *People v. Avena* (1966)
13 Cal.4th 394, 418 [53 Cal.Rptr.2d 301, 916
P.2d 1000] (*Avena*).)" (*People v. Frye* (1998)
18 Cal.4th 894, 979-980; in accord, see also
*People v. Anderson* (2001) 25 Cal.4th 543,
569.)

B.  No Denial of The Right Appears in The Record on Appeal

Appellant argues that the record on appeal
affirmatively discloses that counsel had no rational
tactical purpose for not presenting testimony from
these witnesses. (*People v. Fosselman, supra*, 33 Cal.3d
at p. 581; *People v. Frye, supra*, 18 Cal.4th at pp.
979-980.) We disagree. The record on appeal does not
affirmatively disclose that this "exculpatory evidence"
ever existed prior to trial-i.e., that any of these
witnesses were willing to testify at trial to the
things they have now said in their post-trial
declarations. None of the three declarants even
attempts to explain why he or she did not come forward

and offer the information to either the prosecution or
the defense at some point prior to appellant's second
trial (or prior to the first trial, for that matter).
None denies knowing, prior to trial, that appellant was
criminally charged. None denies knowing that appellant
was tried twice. None attempts to explain how the
defense suddenly obtained their statements after
appellant was found guilty at his second trial. None
denies having been asked by police or by investigators,
prior to trial, if they knew anything about the
shooting. The record on appeal is equally as consistent
with one view-that the three declarants made up their
post-trial statements after appellant was convicted in
order to help him obtain yet another new trial-as it is
with the explanation that appellant asks us to glean
from the appellate record-i.e., that appellant's trial
counsel failed to investigate and failed to discover
exculpatory information that was available for the
asking.

Appellant seizes upon a written statement made by
appellant's trial counsel in which he told the court
that "[t]he three witness ... were unknown to me at the
time of either the first trial or the second trial of
this matter." Appellant contends that Gray (sic) and
Batten were expressly mentioned in a police report
provided to the defense, and that Gray (sic) and
Batten's post-trial declarations thus affirmatively
show a failure of trial counsel to properly investigate
prior to trial. But after the district attorney's
opposition to the motion pointed out that Gray (sic)
and Batten were mentioned in the original police
"incident report" provided to the defense in discovery,
and that Batten was one of three defendants charged as
a result of the shooting (along with appellant and
Samuel "Trigger" Miles) and had pleaded guilty to
charges stemming from the incident, trial counsel
explained his statement at the hearing on appellant's
motion for a new trial. Appellant's trial counsel told
the court "the information that we are getting
is somewhat different as far as information that we
previously had from the witnesses" and "I did not
quarrel with the fact that the witnesses were in the
reports and known, but the statements that we got from
these witnesses are different from the statements that
have been made previously." Trial counsel also told the
court "[k]nowing who the witnesses are and knowing what
they're going to say are two different subjects as far
as I am concerned."

No one appears to contend that Chapman was mentioned in
any police reports. Appellant does not explain how the
record on appeal demonstrates that trial counsel should
have been aware of Chapman's existence, or of her
supposed willingness to testify that she was in the

apartment with Demont Wilson when the shot or shots were fired. Certainly her own declaration provides no such explanation. Possibly this is one reason why appellant raises no contention on this appeal that the court erred in denying his motion for a new trial. *(See People v. Delgado* (1993) 5 Cal.4th 312, 328.) A witness at appellant's second trial, DeOcean Williams, was asked who was in her apartment (# 102) at the time of or shortly after the shooting. She mentioned nine persons. These were herself, her sisters Jamie and Lakesha, her two small children, Jessica Flores, Demetria Wilson, Lamont Wilson and (after shots were fired) Demont Wilson. When Demont Wilson testified about who was there he mentioned seven of these nine persons (all but the sisters Jamie and Lakesha). No witness at trial mentioned the name Lynn Chapman. Nothing in the record on this appeal demonstrates that appellant's trial counsel fell below an objective standard of reasonableness in not presenting her as a witness. Nor is it even clear, from this record, that trial counsel would have called Chapman as a witness at trial even if he had known prior to trial of the assertions she now makes in her declaration. She would have had to undergo cross-examination, and would have had to convince the trier of fact that she was really at the scene even though other witnesses, who the court found credible, did not place her at the scene. "[I]n the absence of an explanation in the record, appellate courts should not speculate that trial counsel's failure to present a particular defense resulted from incompetence. To justify relief, appellant must be able to point to something in the record showing that counsel had no satisfactory rationale for what was done or not done." *(People v. Pope, supra*, 23 Cal.3d at p. 426, fn. 16.) Appellant has made no such showing on this appeal.

(LD 1, 6-9.)

B.   <u>Analysis</u>

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). <u>Premo v. Moore</u>, –U.S.–, 131 S.Ct. 733, 737-38 (2011); <u>Canales v. Roe</u>, 151 F.3d 1226, 1229 n.2 (9th Cir. 1998).

The Supreme Court has described the high bar presented by § 2254(d)(1) for prevailing on a claim of ineffective assistance

of counsel:

"To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.' [Strickland,] 466 U.S., at 688 [104 S.Ct. 2052]. A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. Id., at 689 [104 S.Ct. 2052]. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id., at 687 [104 S.Ct. 2052].

"With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' ...

" 'Surmounting Strickland's high bar is never an easy task.' Padilla v. Kentucky, 559 U.S. ----, ---- [130 S.Ct. 1473, 1485, 176 L.Ed.2d 284] (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial proceedings], and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690 [104 S.Ct. 2052]. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' Id., at 689 [104 S.Ct. 2052]; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S.Ct. 2052.

"Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both 'highly deferential,' id., at 689 [104 S.Ct. 2052]; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so,

16

> <u>Knowles</u>, 556 U.S., at ----, 129 S.Ct., at 1420. The
> <u>Strickland</u> standard is a general one, so the range of
> reasonable applications is substantial. 556 U.S., at
> ---- [129 S.Ct., at 1420]. Federal habeas courts must
> guard against the danger of equating unreasonableness
> under <u>Strickland</u> with unreasonableness under § 2254(d).
> When § 2254(d) applies, the question is not whether
> counsel's actions were reasonable. The question is
> whether there is any reasonable argument that counsel
> satisfied <u>Strickland's</u> deferential standard."

<u>Premo v. Moore</u>, -U.S. -, 131 S.Ct. 733, 739-40 (2011) (quoting

<u>Harrington v. Richter</u>, –U.S.–, 131 S.Ct. 770 (2011)).

Here, the state court cited <u>Strickland</u> and articulated the

correct legal standards for evaluating claims of ineffective

assistance of counsel.  Further, the state court reasonably

concluded that the record failed to demonstrate that the

allegedly new evidence from the three witnesses was available

before the trial.

All three witnesses declared under penalty of perjury that

they were present at the shooting, and Demont Wilson was inside

his apartment at the time of the shooting.[3]  Batten stated that

Petitioner was not present, while the other two witnesses stated

they did not know Petitioner.  Clay's statement that he was

informed that someone would call him was the only explanation

offered for the witnesses' individual or collective failure to

---

[3] Charles Clay's statement to a defense investigator and his declaration
reflected that on June 29, 2004, Clay stated that he did not know Daniel Jones
but did know Demont Wilson, who was inside a downstairs apartment with his
girlfriend at the time Clay observed the shot being fired from outside the
gate.  Clay was not questioned by police, who took his information and
informed him that someone would call him.  (2 CT 392-96.)  Clay's declaration
dated August 26, 2004, was consistent with his statement.  (<u>Id.</u> at 398.)
    Lynn Chapman declared that she did not know Daniel Jones, but she was
with Demont Wilson at the time of the shooting inside Wilson's apartment on
the couch and then in the back bedroom of the apartment.  (<u>Id.</u> at 399.)
    James Batten declared that he was present and witnessed the shooting,
during which shots were fired from outside the gate; Daniel Jones was not
present and was innocent.  (<u>Id.</u> at 400.)

inform the police or the defense of their information.  Clay's
explanation extends only to Clay's initial contact with police.
There is no evidence that any or all of the three witnesses were
ignorant of the charges against Petitioner, Petitioner's two
trials, or the guilt findings; there is no explanation for their
delay in communicating their information to either the
prosecution or the defense.  Although Batten was a co-defendant,
there is no background or explanation concerning the timing of
his making a new statement in relation to his having entered a
plea to any charges.  There is no independent, record basis to
support Lynn Chapman's presence at the scene.

Review of the new trial motion filed by the defense reflects
that defense counsel represented that the three witnesses were
unknown to him at the time of the first two trials, and he did
not recall seeing their names on a list of potential witnesses
for the prosecutor or any report from the police department,
prosecutorial investigative staff, or a special gang unit
regarding an interview with any of the witnesses.  (II CT 390-
91.)  However, at the hearing on the new trial motion on February
17, 2005, the prosecutor represented, without contradiction, that
by the time of the second trial, Batten, who was a co-defendant,
was available and was known to the defense.  Further, Clay was
known to the defense because he was named in the original report
of the matter several years before the motion hearing.  (XII RT
3306.)  Petitioner's counsel qualified his characterization of
the availability of the evidence:

> [DEFENSE COUNSEL]:  Well, basically, as I indicated
> in my end of this motion, and I did not indicate that
> the name Chapman and Clay were probably known to us

18

1  before, but the information that we are getting is
2  somewhat different as far as information that we had
   previously from the witnesses....

3  (XII RT 3304-05.)  In submitting the motion, Petitioner's counsel

4  further stated the following:

5      [DEFENSE COUNSEL]:  Of course, I just said a moment
       ago to the Court that I did not quarrel with the fact that
6      the witnesses were in the reports and known, but
       the statements that we got from these witnesses are
7      different from the statements that have been made
       previously.  Some we did not know, and it coincides.
8      I mean you can't ignore the evidence at trial.  You just
       can't blindly ignore the fact that there is a motive for
9      Damon (sic) Wilson to fabricate.  The witnesses have
       stated that Damon (sic) Wilson was lying because he was
10     inside the apartment when the shots were fired.  Knowing
       who the witnesses are and knowing what they're going to
11     say are two different subjects as far as I am concerned.
       And I do not think the cases that are cited in the
12     Points and Authorities made that, because we have
       known about the witnesses but we have got these new
13     statements from them....

14 (Id. at 3306-07.)  The trial court expressly stated that the

15 issue was the subject matter of the witnesses' testimony.  Based

16 on the evidence that the court had heard while presiding over

17 both trials, the court concluded, "I really am convinced that

18 there is no reasonable probability that a different result would

19 come about in a third trial even if Ms. Chapman were to testify

20 and she truly is a witness."  (Id. at 3308.)

21     On the appellate record, the state court reasonably

22 concluded that the credibility of the three witnesses was

23 doubtful.  The record thus supported a conclusion that Petitioner

24 had not shown that the evidence had been available earlier, or

25 that counsel had engaged in objectively unreasonable omissions by

26 failing to undertake a reasonable investigation of the witnesses

27 or to present the three witnesses at the second trial.  Further,

28 the record did not foreclose a conclusion that counsel had

19

decided that given the circumstances surrounding the witnesses'
revelations, he would not present the witnesses at trial, where
they would have been subject to cross-examination.  The state
court reasonably decided that the record did not foreclose a
tactical decision on the part of counsel.

In sum, the state court applied the correct, applicable,
clearly established federal law concerning the ineffective
assistance of counsel.  The court's conclusion that Petitioner
had not shown that trial counsel's performance fell below an
objective standard of reasonableness was not "so lacking in
justification that there was an error well understood and
comprehended in existing law beyond any possibility for
fairminded disagreement."  <u>Harrington v. Richter</u>, 131 S.Ct. at
786–87.

Accordingly, the state court decision was not contrary to,
or an unreasonable application of, clearly established federal
law within the meaning of 28 U.S.C. § 2254(d)(1).  Thus,
Petitioner's claim concerning the allegedly ineffective
assistance of counsel should be denied.

VII.   <u>Petitioner's Sentence as a Violation of
       Due Process of Law</u>

Petitioner argues that the trial court erred by treating
§ 246, which proscribes shooting into an inhabited dwelling and
normally carries a maximum punishment of seven years, as a felony
punishable by life imprisonment by improperly incorporating the
provisions of Cal. Pen. Code § 186.22, and then adding a twenty-
year term pursuant to § 12022.53(c).  Petitioner argues that the
CSC misunderstood the scope of its discretion to impose

1  enhancements.  He contends that but for the state court's errors,
2  he would not have faced a sentence of fifteen years to life plus
3  twenty years, but rather a determinate term of no more than seven
4  years for violating § 246.

5      Petitioner argues that his right to due process of law
6  guaranteed by the Fourteenth Amendment was violated by the state
7  court's imposition of a sentence of fifteen years to life on the
8  violation of Cal. Pen. Code § 246 (shooting at an inhabited
9  dwelling) as well as a twenty-year term pursuant to Cal. Pen.
10 Code § 12022.53(c) because it constituted "bootstrapping
11 punishment" after Petitioner's conduct had already been
12 "aggravated under a separate statute, thus constituting dual use
13 of facts to enhance punishment." (Pet. 9.)  Petitioner cites
14 state law for the proposition that dual use of facts is
15 proscribed.  (Id. at 46.)  Petitioner also contends that this is
16 impermissible under federal law, citing Brecht v. Abrahamson, 507
17 U.S. 619, 623 (1993) for the proposition that a court must
18 determine whether the error of the trial court had a substantial
19 and injurious effect on the Petitioner's sentence.

20     Citing Hicks v. Oklahoma, 447 U.S. 343, 346 (1980),
21 Petitioner further contends that the sentence was unauthorized,
22 harsh, and excessive, and a violation of due process of law
23 because the state court failed to honor unspecified procedures
24 attendant to a state-created liberty interest.

25          A.  The State Court Decision

26     The CSC issued a reasoned decision in People v. Daniel
27 Laquinn Jones, case number S148463, which was filed on August 31,
28 2009, and published at People v. Jones, 47 Cal.4th 566 (2009).

1   (LD 5.)

2        The CSC's decision did not advert to the Due Process Clause

3   or to Petitioner's due process claim that was set forth in his

4   petition for review.[4]   The CSC held that where one commits a

5   specified felony to benefit a criminal street gang within the

6   meaning of Cal. Pen. Code § 186.22(b)(4), the felony is

7   punishable by imprisonment for life within the meaning of Cal.

8   Pen. Code § 12022.53(a)(17).   Under Cal. Pen. Code § 12022.53(c),

9   a twenty-year sentence enhancement is imposed on a defendant who

10  personally and intentionally discharges a firearm in the

11  commission of a felony that is in turn punishable by death or

12  imprisonment in the state prison for life pursuant to

13  § 12022.53(a)(17).   The CSC held that it was thus appropriate for

14  Petitioner to be sentenced to the twenty-year sentence

15  enhancement pursuant to § 12022.53(c) because his offense of

16  shooting into an inhabited dwelling qualified under

17  § 12022.53(a)(17) based on the gang finding; the term imposed

18  pursuant to § 186.22(b)(4) was an alternate penalty for the

19  underlying felony itself, and not a mere enhancement.   Thus,

20  imposition of the enhancement pursuant to § 12022.53(c) was

21  proper.   People v. Jones, 47 Cal.4th at 568-78.

22        The CSC thus affirmed the CCA's position.   The CSC decided

23

24        [4] The petition for review contained two paragraphs in which it was argued
    that the imposition of the allegedly unauthorized term violated Petitioner's
25  right to due process of law under the Fourteenth Amendment because it was
    unauthorized by state law and because the state court failed to honor
26  unspecified procedures attendant to an unspecified state-created liberty
    interest.  (LD 2, 31-32.)  Petitioner cited Hicks v. Oklahoma, 447 U.S. 343,
    346 (1980).  (Id. at 31.)
27        In a petition for rehearing, Petitioner argued that the CSC had
    arbitrarily and inconsistently interpreted the same statutes in violation of
28  Petitioner's rights to equal protection and due process of law.  (Doc. 2-1,
    69-80 [portion of petition for rehearing].)

1   the case based on state law principles of statutory construction

2   and interpretation of legislative intent.[5]   The CSC expressly

3   rejected the argument that such a sentence was the product of

4   impermissible "bootstrapping," distinguishing People v. Briceno,

5   34 Cal.4th 451 (2004) and People v. Arroyas, 96 Cal.App.4th 1439

6   (2002), upon which Petitioner relies.   Jones, 47 Cal.4th at 572-

7   75.   The CSC expressly rejected Petitioner's contention that

8   California's legislature did not intend to apply the enhancement

9   of § 12022.53 to the offense of shooting at an inhabited

10  dwelling.   Id. at 578-79.

11            B.   Adjudication on the Merits

12       The Court will consider whether the state courts adjudicated

13  Petitioner's due process claim on the merits within the meaning

14  of 28 U.S.C. § 2254(d), which limits the availability of habeas

15  corpus relief for claims that have previously been adjudicated on

16  the merits in state court proceedings.

17       If the claim was adjudicated on the merits, pursuant to

18  § 2254(d)(1), this Court will grant relief only if the Petitioner

19  shows that the state court decision was contrary to, or an

20  unreasonable application of, clearly established federal law.

21  Where the state court decides an issue on the merits, but its

22  decision is unaccompanied by an explanation, a habeas

23  petitioner's burden must be met by showing that here was no

24  reasonable basis for the state court to deny relief.   Harrington

25  v. Richter, 131 S.Ct. 770, 784.   In such circumstances, this

26

27

28      ⁵ Because the CSC decided the issues of statutory construction and application solely on the basis of state law and did not expressly address Petitioner's constitutional claims, the published decision is not set forth at length. The pertinent portions of the decision will be summarized in the course of this Court's analysis of the issues.

1  Court should perform an independent review of the record to
2  ascertain whether the state court decision was objectively
3  unreasonable.  Medley v. Runnels, 506 F.3d 857, 863 n.3 (9th Cir.
4  2007), cert. denied, 552 U.S. 1316 (2008); Himes v. Thompson, 336
5  F.3d 848, 853 (9th Cir. 2003).  Independent review is not the
6  equivalent of de novo review; rather, the Court must still defer
7  to the state court's ultimate decision.  Pirtle v. Morgan, 313
8  F.3d 1160, 1167 (9th Cir. 2002).  However, if the claim was not
9  decided on the merits, this Court must review it de novo.  Pirtle
10  v. Morgan, 313 F.3d at 1167.

11     A state court has adjudicated a claim on the merits within
12  the meaning of § 2254(d) when it decides the petitioner's right
13  to relief based on the substance of the constitutional claim
14  raised, rather than denying the claim because of a procedural or
15  other rule precluding state court review of the merits.  Lambert
16  v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).

17     When a federal claim has been presented to a state court and
18  the state court has denied relief, it may be presumed that the
19  state court adjudicated the claim on the merits in the absence of
20  any indication or state-law procedural principles to the
21  contrary.  Harrington v. Richter, 131 S.Ct. 770, 784-85.  Here,
22  the CSC did not grant review of Petitioner's due process claim.
23  It instead limited the issues to the question whether
24  Petitioner's crime was a felony punishable by imprisonment in the
25  state prison for life pursuant to Cal. Pen. Code §
26  12022.53(a)(17) such that the sentence could be enhanced under §
27  12022.53(c) for the Petitioner's personal and intentional
28  discharge of a firearm.  (LD 4.)  A state court's decision to

24

deny discretionary review, such as a decision of the California
Supreme Court to deny a petition for discretionary review of a
state court of appeal's decision on direct appeal in a non-
capital case, is not a decision on the merits, but rather is only
a determination that the California Supreme Court will not
consider the case on the merits. Williams v. Cavazos, 646 F.3d
626, 636 (9th Cir. 2011), cert. grtd. in part,[6] Cavazos v.
Williams, --- S.Ct. ----, 2012 WL 104740 (No. 11-465, U.S. Jan
13, 2012) (citing Harrington v. Richter, – U.S. -, 131 S.Ct. 770,
784-85 (2011); Cal. R. Ct. 8.500; and Campter v. Workers' Comp.
Appeals Bd., 3 Cal.4th 679 (1992)). Because the CSC denied
review of Petitioner's due process claim, it appears that the CSC
did not decide the due process claim on the merits.

    Here, after the CSC issued its decision on Petitioner's
state law sentencing issue, Petitioner filed a petition for
rehearing. Only a portion of the petition is included in the
record before the Court. (Doc. 2-1, 69-80.)[7] Petitioner argued
that the holding of the CSC in his case could not be reconciled
with the holdings of a companion case to Petitioner's case,
People v. Brookfield, or People v. Montes, 31 Cal.4th 350 (2003).
He claimed that the arbitrary and inconsistent interpretations of
state law violated his rights to due process and equal
protection. Reference to the official website of the California
Courts reflects that the petition for rehearing was denied on

---

[6] Certiorari was granted as to the limited issue of whether a habeas petitioner's claim has been "adjudicated on the merits" for purposes of 28 U.S.C. § 2254(d) where the state court denied relief in an explained decision but did not expressly acknowledge a federal-law basis for the claim. Id.

[7] Respondent did not provide this portion of the record of the state court proceedings, and Petitioner has provided only a portion of it.

1  October 28, 2009, without a statement of reasoning or authority.[8]

2  The denial of a petition for rehearing is analogous to the

3  denial of a petition for discretionary review because it

4  effectively signals the reviewing court's refusal to grant

5  review.  Thus, the denial of a rehearing does not constitute a

6  merits determination, and it does not alter this Court's

7  determination concerning whether the claim was decided on the

8  merits in state court.

9  The Respondent has not provided this Court with Petitioner's

10  briefing in the direct appeal to the CCA; thus, it cannot be

11  determined with certainty whether or not Petitioner raised his

12  due process claim on appeal before the CCA.  Even assuming that

13  Petitioner raised his due process claim on direct appeal, review

14  of the CCA's opinion shows that the CCA did not address such a

15  claim or indicate that it was among Petitioner's contentions.

16  Moreover, even if the due process claim had been raised before

17  the CCA, the CCA's opinion expressly decided only Petitioner's

18  state law claims.  Where a petitioner raises a claim in state

19  court, but the state court simply fails to decide the claim

20  without explanation, the state court's process may be

21  characterized as not reaching the merits of the claim.  See,

22  Williams v. Cavazos, 646 F.3d at 636-37 (9th Cir. 2011), cert.

23  grtd. in part, Cavazos v. Williams, --- S.Ct. ----, 2012 WL

24

25  [8] The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, including undisputed information posted on official websites.  Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331,

26  333 (9th Cir. 1993); Daniels-Hall v. National Education Association, 629 F.3d 992, 999 (9th Cir. 2010).  It is appropriate to take judicial notice of the docket sheet of a California court.  White v Martel, 601 F.3d 882, 885 (9th

27  Cir. 2010), cert. denied, 131 S.Ct. 332 (2010).  The address of the official website of the California state courts is www.courts.ca.gov.

28

1   104740   (No. 11-465, U.S. Jan 13, 2012).

2        In any event, it is unnecessary to obtain Petitioner's

3   briefing in the CCA or to decide whether the state courts decided

4   Petitioner's due process claim on the merits.   This is because

5   under either standard of review, this Court's conclusion would be

6   the same.   If a state court decision is correct under de novo

7   review, then it was necessarily reasonable under the more

8   deferential AEDPA standard of review pursuant to 28 U.S.C.

9   § 2254(d).   Berghuis v. Thompkins, –U.S.–, 130 S.Ct. 2250, 2264

10  (2010).   This Court will thus undertake a de novo review.

11            C.   Analysis

12                 1.   State Law Claims

13        To the extent that Petitioner argues that the state court

14  erred in its interpretation or application of state law, or

15  misunderstood the extent of its discretion under the state

16  statutes, Petitioner's allegations do not merit relief in this

17  proceeding.

18        Federal habeas relief is not available to retry a state

19  issue that does not rise to the level of a federal constitutional

20  violation.   Wilson v. Corcoran, 562 U.S. at 16; Estelle v.

21  McGuire, 502 U.S. 62, 67-68 (1991).   Thus, alleged errors in the

22  application of state law are not cognizable in federal habeas

23  corpus.   Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002).   In

24  a habeas proceeding, this Court is bound by the California

25  Supreme Court's interpretation of California law unless the

26  interpretation is deemed untenable or a veiled attempt to avoid

27  review of federal questions.   Murtishaw v. Woodford, 255 F.3d

28  926, 964 (9th Cir. 2001).   Here, there is no basis for departing

1  from the rule that requires this Court to respect state law

2  decisions on state law matters.

3      With respect to state court decisions concerning the

4  application of state sentencing laws, it is established that a

5  claim alleging misapplication of state sentencing law involves a

6  question of state law which is not cognizable in a proceeding

7  pursuant to 28 U.S.C. § 2254.  See, Lewis v. Jeffers, 497 U.S.

8  764, 780 (1990) (rejecting a claim that a state court misapplied

9  state statutes concerning aggravating circumstances on the ground

10 that federal habeas corpus relief does not lie for errors of

11 state law); Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002)

12 (dismissing as not cognizable claims alleging only that the trial

13 court abused its discretion in selecting consecutive sentences

14 and erred in failing to state reasons for choosing consecutive

15 terms); Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989)

16 (dismissing as not cognizable a claim concerning whether a prior

17 conviction qualified as a sentence enhancement under state law).

18 Absent a showing of fundamental unfairness, a state court's

19 misapplication of its own sentencing laws does not justify

20 federal habeas relief.  Christian v. Rhode, 41 F.3d 461, 469 (9th

21 Cir. 1994) (determining that a defendant was not entitled to

22 habeas relief where he argued that his prior conviction of a

23 federal offense could be used to enhance his state punishment

24 because there was no unfairness found in the state's

25 interpretation of federal law to enhance a state sentence).

26     Here, no fundamental unfairness appears.  Petitioner was

27 sentenced based on the trial court's specific findings concerning

28 Petitioner's conduct in relation to specified sentencing

1  statutes.

2                    2.  <u>Arbitrary Deprivation of Liberty</u>

3        Petitioner relies on <u>Hicks v. Oklahoma</u>, 447 U.S. 343 (1980),

4   in which the Court found that a defendant's sentence was imposed

5   in violation of the Due Process Clause of the Fourteenth

6   Amendment, which protects against arbitrary deprivation of

7   liberty by the state.  In <u>Hicks</u>, the jury, which was given the

8   discretion under state law to impose punishment, was instructed

9   under a habitual offender statute, later declared to be

10  unconstitutional, to sentence the Petitioner to a mandatory forty

11  years.  Had the jury been properly instructed, it could have

12  imposed a sentence of not less than ten years.  The Court

13  reasoned that the defendant's interest in the process of the

14  exercise of a jury's discretion as to penalty that was created by

15  state law was not merely a matter of state procedural law because

16  the defendant had a "substantial and legitimate expectation that

17  he will be deprived of his liberty only to the extent determined

18  by the jury in the exercise of its statutory discretion," and

19  that the "liberty interest is one that the Fourteenth Amendment

20  preserves against arbitrary deprivation by the State."  <u>Id.</u> at

21  346.  The Court concluded that the petitioner was denied his

22  right to the jury's judgment.  Further, the conclusion of a state

23  appellate court that a jury might have imposed an equally harsh

24  sentence as that mandated by the invalidated habitual offender

25  statute was characterized as "frail conjecture" as to what a jury

26  <u>might</u> have done, and an arbitrary disregard of the defendant's

27  right to liberty.  <u>Id.</u> at 345-46.

28  ///

1    Here, as in <u>Hicks</u>, state law provided a specific method for

2  determining whether a specific sentence should be imposed.

3  Petitioner was entitled under state law to be sentenced according

4  to the pertinent sentencing statutes in light of the specific

5  findings made by the trial court in relation to those statutes.

6  Petitioner does not claim that any of those statutes has been

7  invalidated.  Each of the components of Petitioner's sentence was

8  imposed by the sentencing court in accordance with the court's

9  specific findings.  Petitioner was thus not deprived of any

10 statutory entitlement.

11    Petitioner cites <u>Walker v. Deeds</u>, 50 F.3d 670, 672-73 (9th

12 Cir. 1995), a case similar to <u>Hicks</u>, in which a specific

13 procedure was mandated for imposition of a habitual offender

14 statute.  In <u>Walker</u>, the state sentencing judge failed to perform

15 his statutory obligation to find that it was just and proper to

16 adjudge the defendant a habitual criminal before sentencing the

17 defendant under the statute.  Unlike <u>Walker</u>, here, there is no

18 contention that the appropriate statutory findings were not made.

19    Petitioner cites <u>Richmond v. Lewis</u>, 506 U.S. 40, 50 (1992),

20 in which the Court determined that a death sentence violated the

21 Eighth Amendment where the sentencing judge gave weight to an

22 unconstitutionally vague aggravating factor of commission of the

23 offense in an especially heinous, cruel, or depraved manner, and

24 a state reviewing court did not cure that error by properly re-

25 weighing the factors.  The Court considered whether the reliance

26 on the invalid factor was so arbitrary or capricious as to

27 constitute an independent due process or Eighth Amendment

28 violation.  <u>Id.</u> at 50.  In the present case, there is no

30

infirmity in the state sentencing laws, and the sentencing

determination was made in accordance with the pertinent statutes

and procedures.  Further, this case involves a sentence of a term

for years as distinct from the death penalty; thus, the

constitutional limitations are not analogous.

Petitioner also relies on Fetterly v. Paskett, 997 F.2d

1295, 1300 (9th Cir. 1993).  Fetterly involved a death sentence

and the question whether a state had followed its statutory

procedures for imposing the sentence, which were necessary to

render the pertinent state death penalty statute and the

resulting death sentence valid under the Eighth Amendment's

prohibition against cruel and unusual punishment.  Again, the

sentencing laws and procedures in Fetterly differ significantly

from those involved in Petitioner's case.

In sum, the authorities relied on by Petitioner regarding

arbitrary deprivations of liberty do not support granting

Petitioner relief with respect to his sentence.

### 3.  Dual Use of Facts

Petitioner does not cite any federal decisions forbidding

"dual use" of facts in an analogous sentencing context.

Petitioner's reliance on Brecht v. Abrahamson, 507 U.S. at 623 is

also misplaced.  Brecht simply sets forth the general standard of

prejudice that a habeas petitioner proceeding pursuant to § 2254

must meet to be entitled to habeas relief for a constitutional

violation; it does not forbid the sentencing practices or

statutes employed in the present case.

Further, Petitioner's "bootstrapping" or dual use argument

was rejected by the CSC as a matter of state law.  Petitioner was

31

charged in count 3 with having shot into an inhabited dwelling in
February 2002 in violation of Cal. Pen. Code § 246; having
personally used a firearm within the meaning of §§ 12022.5(a)(1)
and 12022.53(b) and (e)(1); and having committed the offense "for
the benefit of, at the direction of, and in association with a
criminal street gang with the specific intent to promote, further
and assist in criminal conduct by gang members" within the
meaning of Cal. Pen. Code § 186.22(b)(1).[9]   (I CT 115.)
Petitioner was also charged in count 5 with having engaged in the
crime of street terrorism in violation of Cal. Pen. Code §
186.22(a), a felony, in that he did "unlawfully and actively
participate in a criminal street gang with knowledge that its
members engage in and have engaged in a pattern of criminal gang
activity and did promote, further and assist in felony criminal
conduct by gang members."   (I CT 116.)[10]   Petitioner was found

---

[9]  At the time of Petitioner's crime (February 2002) (I C.T. 115), Cal. Pen. Code § 186.22(b)(4) provided as follows:

> (b) (1) Except as provided in paragraphs (4) and (5), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished as follows:
> . . .
> (4) Any person who is convicted of a felony enumerated in this paragraph committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, be sentenced to an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of:   . . .
> > (B) Imprisonment in the state prison for 15 years, if the felony is a home invasion robbery, in violation of subparagraph (A) of paragraph (1) of subdivision (a) of Section 213; carjacking, as defined in Section 215; a felony violation of Section 246; or a violation of Section 12022.55.

2001 Cal. Stat. ch. 854, sec. 22.

[10]  At the time of Petitioner's offense, Cal. Pen. Code § 186.22(a) defined the offense of street terrorism as follows:

> (a) Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully

guilty of violating § 246 (count 3) for the benefit of a street
gang pursuant to § 186.22(b)(1), and was also found to have
committed the separate offense of street terrorism alleged in
count 5 in violation of § 186.22(a).  (XI RT 3062-63; II CT 301.)

In its decision in Petitioner's case, the CSC noted that in
People v. Briceno, 34 Cal.4th 451 (2004), the issue was whether
Cal. Pen. Code § 1192.7(c)(28), defining any felony offense that
would also constitute a felony violation of § 186.22 as a
"serious felony," applied only to the substantive offense of
street terrorism defined in § 186.22(a), or also to felonies that
are subject to additional punishment pursuant to the enhancement
for committing an offense for the benefit of a gang under
§ 186.22(b)(1).  In Briceno, the CSC held that § 1192.7(c)(28)
applied to both types of felonies.  (LD 5, 7.)  However, in
Briceno, the CSC cautioned that although any felony committed for
the benefit of a criminal street gang could be defined as a
serious felony under § 1192.7(c)(28), the same gang-related
conduct that rendered the felony serious could not be used again
to obtain an additional five-year sentence under
§ 186.22(b)(1)(B).  (Id. at 8.)

In Petitioner's case, § 1192.7 was not in issue.  Instead,
§ 12022.53(c)[11] was applied by the sentencing court to add a

promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall
be punished by imprisonment in a county jail for a period not to exceed one year, or by
imprisonment in the state prison for 16 months, or two or three years.
2001 Cal. Stat. ch. 854, sec. 22.

[11] At the time of Petitioner's offense, Cal. Pen. Code § 12022.53 provided in pertinent part
as follows:
12022.53. (a) This section applies to the following felonies:

twenty-year term based on the commission of a felony specified in § 12022.53(a) – i.e., a "felony punishable by... imprisonment in the state prison for life" within the meaning of § 12022.53(a)(17) – a violation of § 246 in which Petitioner was found to have personally used or discharged a firearm.  The CSC decided as a matter of state law that Petitioner's case was not analogous to <u>Briceno</u> because the two statutes at issue in Petitioner's case were not enacted through a single initiative, as with the provisions at issue in <u>Briceno</u>.  Further, only one of the provisions in Petitioner's case pertained to criminal street gangs, whereas two such provisions had been involved in <u>Briceno</u>; and Petitioner was subject to the § 12022.53(c) enhancement not because he committed a gang-related offense, but rather because he committed "a particularly heinous crime (that is, a crime so serious that it is punishable by life imprisonment)."  <u>Jones</u>, 47 Cal.4th at 575.  (LD 5, 10, 7-10.)

///

---

. . .
(17) Any felony punishable by death or imprisonment in the state prison for life.
. . .
(c) Notwithstanding any other provision of law, any person who is convicted of a felony specified in subdivision (a), and who in the commission of that felony intentionally and personally discharged a firearm, shall be punished by a term of imprisonment of 20 years in the state prison, which shall be imposed in addition and consecutive to the punishment prescribed for that felony.
. . .
(e)(1) The enhancements specified in this section shall apply to any person charged as a principal in the commission of an offense that includes an allegation pursuant to this section when a violation of both this section and subdivision (b) of Section 186.22 are pled and proved.

(2) An enhancement for participation in a criminal street gang pursuant to Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1 shall not be imposed on a person in addition to an enhancement imposed pursuant to this subdivision, unless the person personally used or personally discharged a firearm in the commission of the offense.

2001 Cal. Stat. ch. 854, § 60.

1    Further, the CSC characterized § 186.22(b)(4) not as an
2    enhancement, but rather as a penalty provision that actually set
3    forth an alternate penalty for the underlying felony itself when
4    the trier determined that the defendant satisfied the specified
5    conditions.  As such, the provision was similar to a third
6    provision, § 186.22(d), which had also been interpreted as a
7    penalty provision in Robert L. v. Superior Court, 30 Cal.4th 894
8    (2003).  Jones, 47 Cal.4th at 576.  (LD 5, 10-11.)

9    Finally, also as a matter of state law, the CSC
10   distinguished People v. Montes, 31 Cal.4th 350 (2003), in which
11   the trial court imposed a life term under § 12022.53, and the
12   issue was the applicability of a parole eligibility provision in
13   § 186.22(b)(5), which provided that a defendant who commits a
14   felony punishable by imprisonment in the state prison for life to
15   benefit a criminal street gang must serve at least fifteen years
16   before becoming eligible for parole.  In Montes, the CSC held
17   that the minimum time provision in § 186.22(b)(5) did not apply
18   where the substantive offense was punishable by life imprisonment
19   only because of the application of § 12022.53 and not where the
20   felony by its own terms provided for a life sentence.  People v.
21   Jones, 47 Cal.4th at 577-78.  In Petitioner's case, the CSC
22   declined Petitioner's invitation to construe the phrase "felony
23   punishable by... imprisonment in the state prison for life"
24   appearing in § 12022.53(a)(17) in the same fashion as the CSC had
25   construed the phrase "felony punishable by imprisonment for life"
26   in § 186.22(b)(5) in Montes.  The CSC reasoned that the life
27   sentence in Montes was imposed as a sentence enhancement, whereas
28   Petitioner's life sentence was imposed under § 186.22(b)(4),

35

which does not set forth an enhancement, but rather an alternate penalty for the underlying felony.  Id.   Thus, imposition of the twenty-year enhancement of § 12022.53(c) was appropriate.  Id. at 578.   Further, the intent of the California legislature did not preclude the enhancement.  Id. at 578-79.  (LD 12-14.)

Thus, review of the CSC's decision demonstrates that Petitioner's dual use argument amounts to a state law contention which the CSC rejected based on state law.  This Court will respect that determination.

In sum, insofar as Petitioner's due process claim actually amounts to a claim made under state law, Petitioner is not entitled to relief in this proceeding.  Insofar as Petitioner is relying the federal authorities reviewed herein, Petitioner has failed to show arbitrary action or any other violation of his right to due process of law.  Petitioner's allegations of a liberty interest and violations thereof are general and conclusory.  Mere conclusions of violations of federal rights in a federal habeas petition, unsupported by specific facts, do not state a basis for habeas corpus relief. Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995).

The Court concludes that Petitioner's due process claim should be denied.

VIII. Cruel and Unusual Punishment

Insofar as Petitioner may be arguing that his sentence was a violation of the Eighth Amendment, Petitioner has not exhausted such a claim.

In any event, Petitioner's sentence does not appear to exceed the statutory range of punishments for his offense, and

36

thus it would not appear to violate the Eighth Amendment.
Outside of the capital punishment context, the Eighth Amendment
prohibits only sentences that are extreme and grossly
disproportionate to the crime.  United States v. Bland, 961 F.2d
123, 129 (9th Cir. 1992) (quoting Harmelin v. Michigan, 501 U.S.
957, 1001, (1991) (Kennedy, J., concurring)).  Such instances are
"exceedingly rare" and occur in only "extreme" cases.  Lockyer v.
Andrade, 538 U.S. at 72-73; Rummel, 445 U.S. at 272.  So long as
a sentence does not exceed statutory maximums, it will not be
considered cruel and unusual punishment under the Eighth
Amendment.  See United States v. Mejia-Mesa, 153 F.3d 925, 930
(9th Cir. 1998); United States v. McDougherty, 920 F.2d 569, 576
(9th Cir. 1990).

Therefore, to the extent that Petitioner's claim is
considered, the claim should be denied.

IX.  Equal Protection by Uneven Application of the Law

Petitioner argues for the first time in his traverse that
California laws were unevenly applied to him.  (Trav., doc. 21,
6-8.)  Petitioner appears to be raising an equal protection
claim.

It is improper to raise substantively new issues or claims
in a traverse, and a court may decline to consider such matters.
Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994), cert.
den., 514 U.S. 1026 (1995).  To raise new issues, a petitioner
must obtain leave to file an amended petition or additional
statement of grounds.  Id.  Thus, this Court should exercise its
discretion to decline to address such a claim.
///

1    If the Court should desire to address Petitioner's claim,

2 then to the extent that Petitioner complains that People v.

3 Briceno, 34 Cal.4th 451 (2004), and People v. Arroyas, 96

4 Cal.App.4th 1439 (2002) should have been applied to his case,

5 Petitioner is not entitled to relief.  As set forth above, the

6 CSC distinguished the various statutes whose substance and

7 overlap were at issue in those cases from the statutes applicable

8 to Petitioner's case, expressly rejecting Petitioner's view of

9 the scope of the Briceno and Arroyas decisions.  (LD 5, 9-10.)

10 This Court is bound by the CSC's interpretation and application

11 of state law.

12    Likewise, to the extent that Petitioner argues that People

13 v. Montes, 31 Cal.4th 350 (2003) and related cases should have

14 applied to preclude the enhancement, the California Supreme Court

15 distinguished the questions of statutory construction at issue in

16 Montes from those in Petitioner's case, noting that the life

17 sentence imposed in Montes was imposed as a sentence enhancement,

18 whereas Petitioner's life sentence was imposed as a penalty for

19 the underlying felony itself.  (Id. at 12-14.) This Court must

20 respect the California Supreme Court's interpretation and

21 application of state law.

22    Petitioner cites Myers v. Ylst, 897 F.2d 417, 420 (9th Cir.

23 1990) for the proposition that the CSC issued conflicting

24 decisions and failed to "act alike in all cases of like nature"

25 by deciding People v. Brookfield, 47 Cal.4th 583 (2009) and

26 construing § 12022.53 as it did in Petitioner's case.  In Myers,

27 the court held that the California courts violated equal

28 protection by failing to apply retroactively a state decision

that a defendant could establish a prima facie case of minority
under-representation on a jury venire by reliance on relative
disparities in minority representation in the general population
and in the venire.

In <u>People v. Brookfield</u>, 47 Cal.4th 583, the CSC determined
that commission of the felony of shooting at an inhabited
dwelling to benefit a criminal street gang pursuant to
§ 186.22(b)(4)(B) was a "felony punishable by imprisonment in the
state prison for life" within the meaning of § 12022.53(a)(17);
the life sentence did not constitute a sentence enhancement
because it was not imposed in addition to the sentence for the
underlying crime, but rather as an alternate penalty for the
offense.  <u>Brookfield</u>, 47 Cal.4th at 590-91.  This is consistent
with the CSC's ruling in Petitioner's case.

The CSC determined that if the trier also finds true a
sentence enhancement for firearm use, based not on firearm use by
the defendant, but rather on use by another participant in the
crime, the defendant may not be sentenced to the firearm
enhancement in addition to the life term.  The CSC's decision was
based on its interpretation and application of § 12022.53(e)(2),
which provided that an enhancement for participation in a
criminal street gang pursuant to §186.20 <u>et seq.</u> "shall not be
imposed on a person in addition to an enhancement imposed
pursuant to § 12022.53(e) unless the person personally used or
personally discharged a firearm in the commission of the
offense."  Based on a discerned legislative intent, including a
goal to reserve the most severe sentences for those who
personally used or discharged a firearm in the commission of a

39

gang-related crime, the CSC construed the term "enhancement imposed pursuant to § 12022.53(e)" as including both a sentence enhancement as well as an alternate penalty. <u>Id.</u> at 592-96.  The CSC expressly noted that its opinion should not be read as undermining the validity of the strict distinction drawn between sentence enhancements and penalty provisions in other contexts. <u>Id.</u> at 595.

It is thus clear that <u>Brookfield</u> concerned a separate statute regarding sentencing an accomplice who did not personally use a firearm.  Here, Petitioner was found to have personally used a firearm.  Thus, with respect to the pertinent circumstances and the governing statutory provisions, Petitioner was not similarly situated with the defendant in <u>Brookfield.</u>  The Court, therefore, concludes that in all significant respects, Petitioner's case and <u>Brookfield</u> were not similar.

The Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne, Tex. v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985).  Petitioner has not shown a violation of the Fourteenth Amendment's requirement of equal protection of the laws.  Accordingly, it will be recommended that Petitioner's equal protection claim be denied.

X.   <u>Motion to Supplement Exhibits and Argument</u>

On April 21, 2011, Petitioner filed a motion to supplement his exhibits and argument in which he seeks to expand the record to add three sworn documents, including a declaration of James Batten made on June 17, 2009; an affidavit of Charles Clay which appears to have been dated May 19, 2008; and Petitioner's

declaration dated August 3, 2009.  The declarations of Batten and Clay relate primarily to the circumstances of the shooting; Petitioner's declaration addresses his conversations with his defense counsel concerning people whom Petitioner wanted to call as defense witnesses, namely, Lamont Wilson, Charles Clay, James Batten, and Samuel Miles.  These matters relate to Petitioner's claim of ineffective assistance of counsel.

Respondent opposes the motion on the ground that Petitioner has not met his burden of showing that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law pursuant to § 2254(d)(1).  Thus, under Cullen v. Pinholster, 131 S.Ct. 1388, the evidence Petitioner seeks to add to the record has no bearing on this Court's review.

As previously noted, it is unnecessary to decide whether this Court's review is de novo or an independent review of the record for an objectively unreasonable application of clearly established federal law because under either standard, Petitioner has not shown that he is entitled to relief.  However, pursuant to an independent review of the record,  the foregoing analysis shows that Petitioner did not meet his burden of showing that he was entitled to relief under § 2254(d)(1).

If review is properly de novo, Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) permits a judge to direct the parties to expand the record by submitting additional materials relating to the petition.  It is appropriate to expand the record to include materials not before a trial court where the purpose is to clarify the relevant facts and provide meaningful federal review of constitutional

41

1   claims. <u>Vasquez v. Hillery</u>, 474 U.S. 254, 258, 260 (1986).

2       Here, the materials would not clarify the relevant facts or

3   provide meaningful federal review of his claim of ineffective

4   assistance of counsel.  The record already before this Court

5   reflects that in denying Petitioner's second new trial motion,

6   the state court relied on the evidence and gave significant

7   weight to its findings on the credibility of the witnesses.  In

8   ruling on Petitioner's second new trial motion, the trial court,

9   which had the opportunity to view all the evidence and personally

10  observe the demeanor of all the witnesses at both of Petitioner's

11  trials, concluded that the physical evidence was not inconsistent

12  with Petitioner's guilt.  (XI RT 3061.)  Further, the trial court

13  stated that although the credibility of Demont Wilson had been

14  questioned, he was testifying credibly and honestly, and the

15  testimony of Elizabeth Brown supported his testimony to some

16  degree.  The Court expressly stated that it did not have a lot of

17  faith in the new witness (apparently a reference to Lamont

18  Wilson) because he was a "gang-banger" to the extent that

19  anything he said was questionable.  <u>Id.</u>  The court noted that no

20  serious question of the identity of the shooter was presented and

21  believed that Petitioner was the person who was involved.  <u>Id.</u> at

22  3062.

23      Likewise, the CCA interpreted the record as not disclosing

24  that any of the evidence Petitioner presented ever existed prior

25  to trial because it was not shown that any witnesses were willing

26  to testify at trial as to matters set forth in their post-trial

27  declarations; the record was devoid of adequate explanations for

28  the witnesses' failure to offer their evidence earlier; and the

42

testimony of DeOcean Williams and Demont Wilson at Petitioner's second trial was inconsistent with the presence of Lynn Chapman. (LD 1, 7-9.)

The affidavit of Charles Clay that Petitioner seeks to bring before the Court indicates that Clay was outside with Demont Wilson's brother, Lamont, before, during, and after the shots were fired, and that Demont Wilson was inside his apartment "[b]efore and during the shooting."  (Motion at 7.)  In his declaration in support of Petitioner's second new trial motion, Clay had declared that he was walking outside with Demont Wilson before the shooting, but that Demont Wilson was inside the apartment at the time the shots were fired.  (II CT 394-95, 398.) Although Clay explains that he had not been asked questions by law enforcement at the time of the incident and was not aware that criminal charges had been filed (mot. at 7), his inconsistent statements nevertheless do not clarify the relevant facts or render this Court's review more meaningful.

In his declaration submitted in support of Petitioner's second new trial motion, James Batten, a co-defendant, declared that he was personally present and witnessed the shooting; Demont Wilson was inside his apartment as the shots were fired from outside the gate; Petitioner was not present and was not the shooter.  (II CT 400.)  In the declaration which Petitioner seeks to have added to the record, Batten declares that he could not see who fired the shots; before and during the time the shots were fired, he was pursuing the victim, Demont Wilson, and was kicking on the door of Wilson's apartment as Wilson was pressing his body against the door so Batten could not kick it in.  In

43

this position, it was impossible for either Wilson or Batten to see who had fired the shots. (Mot., 5.) Again, the inconsistent statements of Batten, an admitted participant in the gang conflict, would not clarify the record or inform this Court's review. Regarding Petitioner's declaration, Petitioner does not establish why his information concerning his interaction with counsel in 2002 and thereafter was not presented earlier.

In sum, the Court concludes that the record should not be expanded to include the three sworn documents; however, even if it were admitted, it would not alter the analysis or result of Petitioner's claim of the ineffective assistance of counsel. Accordingly, it will be recommended that the motion to expand the record be denied.

XI. <u>Request to Amend the Petition</u>

In his motion to supplement the record, Petitioner asks this court to consider the merits of the petition and to grant the petition, as well as to consider "the record that supports my claim of innocence...." (Mot. 4.) In its opposition, Respondent urges that to the extent that Petitioner is seeking to amend his petition to add an actual innocence claim, he should not be permitted to do so.

If Petitioner's request were considered to be a motion to amend the petition to state a claim of actual innocence, it should be denied because Petitioner has delayed without an adequate reason in making such a request. Further, it appears that amendment of the petition to add such a claim would be futile.

///

44

A petition for a writ of habeas corpus may be amended or supplemented as provided in the rules of procedure applicable to civil actions to the extent that the civil rules are not inconsistent with any statutory provisions or the rules governing section 2254 cases.  28 U.S.C. § 2242; Habeas Rule 12.  Fed. R. Civ. P. 15(a) may be used to permit the petitioner to amend the petition.  Withrow v. Williams, 507 U.S. 680, 696 n.7 (1993).  Fed. R. Civ. P. 15(a) provides with respect to amendments before trial that a party may amend its pleading once as a matter of course within twenty-one days after service of the pleading, a required responsive pleading, or a motion under Rule 12(b), (e), or (f), whichever is earlier.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the Court's leave.  Further, the Court should freely grant leave when justice so requires.

Factors to be considered when ruling on a motion to amend a habeas corpus petition include bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether or not the party has previously amended his pleadings.  Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).  Amendment may be disallowed if the amendment would be futile, such as where the amended matter is duplicative or patently frivolous, or where the pleading does not present new facts but only new theories,  and provides no satisfactory explanation for failure fully to develop the contentions originally.   Ibid.

Here, on April 21, 2011, Petitioner filed the motion in which his cryptic statement about a claim of innocence appeared.  Thus, his request was filed over a month after the answer was

filed on March 15, 2011.  Petitioner has not explained his delay in seeking an amendment or in presenting declarations from third parties that were obtained in 2009.  Petitioner's case reflects a serial development of sources of evidence that is not inconsistent with bad faith.  The evidence upon which Petitioner would rest his claim of innocence, when viewed in light of the record before this Court, contains many inconsistencies and bases for negative credibility determinations that would preclude a finding of innocence.

It will be recommended that to the extent that Petitioner seeks to amend his petition to allege a claim of actual innocence, the motion be denied.

XII.  <u>Certificate of Appealability</u>

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. at 336.  A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right.  § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether the petition states a

valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. at 483-84.

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  Id.  It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

XIII.  Recommendations

Accordingly, it is RECOMMENDED that:

1)  The petition for writ of habeas corpus be DENIED; and

2)  Petitioner's motion to expand the record be DENIED; and

3)  Petitioner's request to amend the petition be DENIED; and

4)  Judgment be ENTERED for Respondent; and

1       5)   The Court DECLINE to issue a certificate of

2   appealability.

3       These findings and recommendations are submitted to the

4   United States District Court Judge assigned to the case, pursuant

5   to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of

6   the Local Rules of Practice for the United States District Court,

7   Eastern District of California.  Within thirty (30) days after

8   being served with a copy, any party may file written objections

9   with the Court and serve a copy on all parties.  Such a document

10  should be captioned "Objections to Magistrate Judge's Findings

11  and Recommendations."  Replies to the objections shall be served

12  and filed within fourteen (14) days (plus three (3) days if

13  served by mail) after service of the objections.  The Court will

14  then review the Magistrate Judge's ruling pursuant to 28 U.S.C.

15  § 636 (b)(1)(C).  The parties are advised that failure to file

16  objections within the specified time may waive the right to

17  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d

18  1153 (9th Cir. 1991).

19

20  IT IS SO ORDERED.

21  **Dated:    September 12, 2012**          _____
                                              **/s/ Sheila K. Oberto**

22                                            UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28